J-A11031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BRENT BENKOVIC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SAMANTHA BENKOVIC | : | No. 1753 MDA 2024 |

Appeal from the Order Entered October 30, 2024
In the Court of Common Pleas of Susquehanna County Civil Division at
No(s):  2023-643-CP

BEFORE:   MURRAY, J., KING, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:                          **FILED: JUNE 6, 2025**

Brent Benkovic (Father) appeals from the order dismissing the custody action he had filed against Samantha Benkovic (Mother), concerning their minor children, M.B. (a son born in September 2019) and L.B. (a daughter born in February 2021) (the Children), for lack of subject matter jurisdiction. The trial court dismissed the custody complaint following a judicial conference with the Honorable Aldo J. Russo, a judge of the Superior Court of New Jersey, based on Judge Russo's determination that New Jersey, rather than Pennsylvania, is the Children's home state under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).[1]  After careful review, we affirm.

---

* Former Justice specially assigned to the Superior Court.

[1] **See** 23 Pa.C.S.A. §§ 5401-5482.

Father and Mother were married on November 23, 2018. **See** Divorce Complaint, 8/30/23, ¶ 4. The Children were both born of the marriage. On August 30, 2023, Father filed a complaint in divorce in Susquehanna County, Pennsylvania, citing an irretrievable breakdown in the marriage. **See id.**, ¶¶ 11, 13.[2, 3] Father alleged that he and Mother had been *bona fide* residents of Pennsylvania for at least six months prior to the filing of the complaint. **See id.**, ¶ 3. Pertinently, in his divorce complaint, Father included a count for custody, seeking shared physical and legal custody of Children. **See id.**, ¶¶ 15-18.

On September 12, 2023, Father filed an emergency petition for special relief, alleging Mother had improperly relocated Children to the parties' shared home in Montclair, New Jersey (the New Jersey home):

> 7. The parties had made arrangements for [Mother] to take the [C]hildren to [the New Jersey home] from September 4, 2023[,] and return on September 7, 2023, at which time [Mother] would return the [C]hildren to Susquehanna County[,] where the [C]hildren reside primarily.
>
> 8. [Mother] notified [Father] on September 7, 2023[,] that she would not be returning the [C]hildren to Susquehanna County,

---

[2] We note that Father cites 23 Pa.C.S.A. § 3301(c) (mutual consent) and (d) (irretrievable breakdown) in the divorce complaint. However, the complaint contains no allegation that Mother consented.

[3] Father and Mother were not separated at the time Father filed the divorce complaint. According to Mother, Father served her with the divorce complaint while the family was "nearing the end of their summer stay" at their summer vacation home in Brackney, Pennsylvania (the Lake House). Preliminary Objections, 9/19/23, ¶ 18.

Pennsylvania[,] and her intentions were to remain in New Jersey with the [C]hildren.

Emergency Petition, 9/12/23, ¶¶ 7-8. Father requested that the court order Mother to return the Children to Pennsylvania. *Id.*, Prayer for Relief ¶ B. The trial court scheduled a hearing on the emergency petition.

On September 13, 2023, Mother filed a custody complaint in Essex County, New Jersey.[4]

On September 19, 2023, Mother preliminarily objected to the custody count in the Pennsylvania action because New Jersey, rather than Pennsylvania, is the Children's home state under the UCCJEA and therefore, the Pennsylvania court lacked subject matter jurisdiction. Mother argued she moved into the New Jersey home in 2017. Preliminary Objections, 9/19/23, ¶ 4.

> 5. After the parties married, they continued to reside in the New Jersey home. [Father] also has a summer vacation home[, *i.e.,* the Lake House] and a home [in] … Binghamton, New York. The [] Lake House is generally closed up in the winter, particularly the previous two years.
>
> 6. … M.B.[] was born in New York City, but he has primarily resided in the New Jersey home since birth (since 2019). … L.B.[] was born in New Jersey and has also resided in the New Jersey home ever since (since 2021). …
>
> 7. The parties live at the New Jersey home for a majority of the year. They typically spend one month in the spring in California visiting Mother's family, visit Father's family in Binghamton on occasional weeks and around the holidays, and spend the summer months at the [] Lake House.

---

[4] This filing appears only in the reproduced record.

- 3 -

8. The parties agreed[,] prior to getting married and afterwards[,] to continue to reside in the New Jersey home as their primary residence, particularly once M.B. began school, in September of 2022.

*Id.*, ¶¶ 5-8 (some capitalization modified). Mother emphasized that M.B. attended nursery school in New Jersey for the 2022-2023 school year, and was registered to return to the same nursery school for the 2023-2024 school year. *Id.*, ¶ 9. Mother averred Children's doctors and nanny are located in New Jersey. *Id.*, ¶¶ 11-12. Upon Mother's request, the trial court continued the previously scheduled custody hearing.

Father filed an answer to Mother's preliminary objections, contesting Mother's characterization of the New Jersey home as the family's primary residence. Father pointed out that "both parties have used the Pennsylvania address[, *i.e.*, the Lake House,] for practically everything, including for voting, taxes, and Father's paystubs." Answer to Preliminary Objections, 10/10/23, ¶ 8.[5]

The court held a hearing on Mother's preliminary objections on October 19, 2023. The parties did not present testimony or other evidence during the hearing. Father argued the court could render a decision based solely on the pleadings. *See* N.T., 10/19/23, at 3-8. By contrast, Mother argued further

---

[5] According to Mother, shortly after the parties' marriage, Father instructed Mother to obtain a Pennsylvania license plate and update any accounts using the Lake House address, which would be "more beneficial for cost purposes…." Preliminary Objections, 9/19/23, ¶ 17.

discovery was necessary, so that the court may make credibility determinations. *See id.* at 8-10. The trial court took the parties' arguments under advisement. Subsequently, on November 1, 2023, the trial court concluded there were disputed issues of material fact concerning the court's jurisdiction and scheduled an evidentiary hearing.

In February 2024, Mother and Father each filed petitions which, in part, accused the opposing party of taking action to influence the trial court's decision concerning jurisdiction. In a petition for special relief, Mother argued Father intended to sell the New Jersey home (in which she had an equitable distribution interest) in an effort to convince the court that Pennsylvania has jurisdiction over the custody dispute. *See* Petition for Special Relief, 2/12/24. Father filed an emergency petition for custody the following day, alleging Mother had violated the parties' informal custody agreement and was attempting to keep the Children in New Jersey "in furtherance of her attempts to circumvent the exercise of this [c]ourt's jurisdiction...." Emergency Petition for Custody, 2/13/24, ¶ 17.[6] The court issued a rule enjoining Father from selling the New Jersey home pending a further hearing and order, and scheduling a hearing.

The trial court summarized what next transpired:

> The parties appeared on March 5, 2024[,] for an evidentiary hearing[,] but no evidence was presented. Rather, the parties

---

[6] In response to Father's emergency petition for custody, Mother again filed preliminary objections citing lack of jurisdiction.

entered a stipulation that provided Pennsylvania was deemed the home state for custody purposes of the [C]hildren[,] and that the Court of Common Pleas of Susquehanna County would reserve jurisdiction **until such time as the court in New Jersey determined if New Jersey had jurisdiction over the custody action.** [By stipulation, Mother agreed to withdraw her preliminary objections.] Finally, if the New Jersey court determined that it had jurisdiction over this custody litigation, then th[e trial] court and the New Jersey court would conduct a conference to determine which court would exercise final jurisdiction.

Thereafter, **the New Jersey court** conducted an extensive evidentiary hearing, and thereafter **determined that New Jersey was the home state of the** [**C**]**hildren.** Judge Russo … provided [the trial court] with a copy of his lengthy decision wherein he determined that New Jersey was the home state of the [C]hildren. Thereafter, on August 28, 2024, [the trial court] and the court in New Jersey conducted a joint conference to determine which court would exercise jurisdiction. At that time, given an appeal was pending of the New Jersey court decision, the joint conference was continued to allow for resolution of that appeal. Another joint conference between [the trial] court and the court in New Jersey was conducted on October 30, 2024. At this conference, it was determined that New Jersey would be the court that exercised jurisdiction over this custody proceeding.

Rule 1925(a) Opinion, 12/6/24, at 2-3 (emphasis added; footnote omitted).

At the close of the October 30, 2024, conference, the trial court issued an order memorializing the courts' determination that New Jersey, rather than Pennsylvania, is the Children's home state under the UCCJEA and therefore has jurisdiction over the parties' custody dispute. Order, 10/30/24. Accordingly, the trial court dismissed Father's custody complaint for lack of jurisdiction. *Id.*

Father filed a timely notice of appeal and a contemporaneous concise statement of errors complained of on appeal pursuant to Pa.R.A.P.

1925(a)(2)(i). The trial court subsequently filed a Rule 1925(a) opinion, appending thereto a copy of Judge Russo's thorough opinion finding that New Jersey is the Children's home state. Rule 1925(a) Opinion, 12/6/24; *see also id.*, attach. (Judge Russo's Opinion (undated)).

Father now raises the following issues for our review:

1. Did the trial court err by dismissing the Pennsylvania custody action for lack of subject matter jurisdiction[,] where subject matter jurisdiction exists pursuant to the … UCCJEA[?]

2. Did the trial court err by, after having encouraged the parties to reach a factual consensus regarding the Children's residence, using that consensus to conclude that the parties improperly attempted to confer subject matter jurisdiction, and then failing to provide Father with the opportunity to provide evidence regarding jurisdiction[?]

3. Did the trial court err in concluding that New Jersey is an appropriate forum for this custody matter[?]

4. Did the trial court err in deferring to the conclusions of the New Jersey court regarding "home state" jurisdiction[,] where the New Jersey court had not complied with the mandatory provisions of the UCCJEA or the Parental Kidnapping Prevention Act[7] by refusing to stay the New Jersey proceedings pending the Pennsylvania court's determination[,] and by refusing to engage in required judicial communication, instead holding a full hearing regarding home state jurisdiction[,] where the custody issues were first filed in Pennsylvania[?]

Father's Brief at 6-7 (parentheses and original footnote omitted; footnote added; some capitalization modified).

_____

[7] *See* 28 U.S.C.A. § 1738A.

We address Father's claims together, as they all relate to Father's argument that Pennsylvania has subject matter jurisdiction over the custody action. Father argues that because he initiated custody proceedings in Pennsylvania before Mother initiated proceedings in New Jersey, the New Jersey court was required to stay its proceedings. *See id.* at 42-46.[8]

---

[8] In support, Father cites section 5426 (simultaneous proceedings) of the UCCJEA, which provides, in pertinent part:

> **(a) General rule.--**Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth may not exercise its jurisdiction under this subchapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this chapter unless the proceeding has been terminated or is stayed by the court of the other state because a court of this Commonwealth is a more convenient forum under section 5427 (relating to inconvenient forum).

> **(b) Stay; communication with other court.--**Except as otherwise provided in section 5424, a court of this Commonwealth, before hearing a child custody proceeding, shall examine the court documents and other information supplied by the parties pursuant to section 5429 (relating to information to be submitted to court). If the court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this chapter, the court of this Commonwealth shall stay its proceeding and communicate with the court of the other state. If the court of the state having jurisdiction substantially in accordance with this chapter does not determine that the court of this Commonwealth is a more appropriate frum, the court of this Commonwealth shall dismiss the proceeding.

23 Pa.C.S.A. § 5426(a), (b).

According to Father, as the New Jersey court did not act in conformity with the UCCJEA's requirements, the trial court was not permitted to defer to any findings rendered by Judge Russo. *Id.* at 46; *see also id.* at 77-86; *id.* at 79 (arguing Judge Russo's "proceedings and determinations … are not entitled to recognition nor enforcement.").[9]

Father claims Pennsylvania is the Children's home state, as it is where the Children spent the greatest consecutive number of days in the six months preceding the custody action. *Id.* at 50-51; *see also id.* at 51 (Father acknowledging that during the six-month period, the Children spent time in Pennsylvania, New Jersey, California, and the Bahamas). Father avers the Children's absences from Pennsylvania were temporary. *Id.* at 52. Father points to the following facts, which, he asserts, support the conclusion that the parties are Pennsylvania residents: 1) Mother and Father are registered to vote in Pennsylvania; 2) Mother and Father each have a Pennsylvania-issued driver's license; 3) the parties' vehicles are registered in Pennsylvania; and 4) the parties' mailing address for joint accounts and tax purposes is in Pennsylvania. *Id.* at 54-55.

Additionally, Father asserts that when Mother agreed to withdraw her preliminary objections as part of the stipulation, she effectively conceded that

---

[9] This Court is unable to review the New Jersey court's failure to stay proceedings on Mother's custody action. Further, as we discuss *infra*, the "first in time" rule is not applicable when there is a home state as defined by the UCCJEA. *See* 23 Pa.C.S.A. § 5426, Uniform Law Cmt.

Pennsylvania is the Children's home state. *See id.* at 61-69. Father claims the trial court violated his due process rights by dismissing his custody claim without providing him an opportunity to present evidence. *See id.* at 69-72.

Father also contends the trial court erred by concluding that New Jersey is an appropriate forum. *See id.* at 73-77. Father points out that the trial court never determined that Pennsylvania was an inconvenient forum. *See id.* at 75-77.

"Subject matter jurisdiction raises a question of law for which our standard of review is *de novo* and our scope of review is plenary." *Weliver v. Ortiz*, 291 A.3d 427, 433 (Pa. Super. 2023). Subject matter jurisdiction "goes to the competence of the court to render a judgment and whose absence is fatal at any stage of proceedings." *Id.*

In child custody cases, the UCCJEA governs subject matter jurisdiction. "The purpose of the UCCJEA is to avoid jurisdictional competition, promote cooperation between courts, deter the abduction of children, avoid relitigating custody decisions of other states, and facilitate the enforcement of custody orders of other states." *A.L.-S. v. B.S.*, 117 A.3d 352, 356 (Pa. Super. 2015).

Section 5421 governs the court's jurisdiction to make an initial custody determination:

> **(a) General rule.--**Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:

(1) this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;

(2) a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under section 5427 (relating to inconvenient forum) or 5428 (relating to jurisdiction declined by reasons of conduct; and:

(i) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence; and

(ii) substantial evidence is available in this Commonwealth concerning the child's care, protection, training and personal relationships;

(3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this Commonwealth is the more appropriate forum to determine the custody of the child under section 5427 or 5428; or

(4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3).

**(b) Exclusive jurisdictional basis.--**Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this Commonwealth.

**(c) Physical presence and personal jurisdiction unnecessary.--**Physical presence of or personal jurisdiction over a party or a child is not necessary or sufficient to make a child custody determination.

23 Pa.C.S.A. § 5421.  A child's "home state" is defined as "[t]he state in which

a child lived with a parent … for at least six consecutive months immediately

before the commencement of a child custody proceeding. … A period of temporary absence of any of the mentioned persons is part of the period." *Id.* § 5402; *see also A.L.-S.*, 117 A.3d at 358 ("The language of the statute is clear and unambiguous—a child's home state is established if the child 'lived with a parent' in that state for six consecutive months prior to the filing of a custody matter.").

"The jurisdiction of the home state has been prioritized over other jurisdictional bases."  23 Pa.C.S.A. § 5421, Uniform Law Cmt.  The Uniform Law Comment to section 5426 explains, in part:

> The problem of simultaneous proceedings is no longer a significant issue.  Most of the problems have been resolved by the prioritization of home state jurisdiction under section 201 (section 5421); the exclusive, continuing jurisdiction provisions of section 202 (section 5422); and the prohibitions on modification of section 203 (section 5423).  **If there is a home state, there can be no exercise of significant connection jurisdiction in an initial child custody determination and, therefore, no simultaneous proceedings.** … Under this Act, **the simultaneous proceedings problem will arise only when there is no home state**, no state with exclusive, continuing jurisdiction and more than one significant connection state.  For those cases, this section retains the "first in time" rule of the UCCJA[, predecessor of the UCCJEA].

*Id.* § 5426, Uniform Law Cmt. (emphasis added; paragraph break omitted).

Importantly, "[c]ourts cannot assume jurisdiction they do not possess, nor can parties confer jurisdiction on the court; jurisdiction is conferred solely by the Constitution and laws of the Commonwealth."  *Weliver*, 291 A.3d at 437-38; *see also McKelvey v. McKelvey*, 771 A.2d 63, 63 n.1 (Pa. Super. 2001) (explaining that parties may bind themselves through the entry of

stipulations, "except to those matters which affect the jurisdiction of the court."). Thus, the portion of the parties' stipulation purporting to establish Pennsylvania as the Children's home state was not binding on either the parties or the trial court. *See* 23 Pa.C.S.A. § 5421, Uniform Law Cmt. (stating that "an agreement of the parties to confer jurisdiction on a court that would not otherwise have jurisdiction under this Act is ineffective.").

Instantly, the trial court never rendered a decision as to whether Pennsylvania was the Children's home state. However, the parties agreed to permit the New Jersey court to make a determination regarding its own home state status and to stay the Pennsylvania proceedings pending that determination. *See* Rule 1925(a) Opinion, 12/6/24, 3 n.2. The New Jersey court, after conducting a six-day evidentiary hearing, determined that New Jersey is the Children's home state. ***See generally id.***, attach. (Judge Russo's Opinion (undated)).[10] This determination rendered the Children's

---

[10] Judge Russo found Mother's testimony "credible and impressive." Rule 1925(a) Opinion, 12/6/24, attach. (Judge Russo's Opinion at 4 (undated and unpaginated)). By contrast, Judge Russo found Father's testimony to be incredible, stating that Father was "calculating in his testimony." ***Id.*** at 5. Judge Russo's extensive opinion thoroughly details the array of evidence offered during the New Jersey hearings, which we need not restate here. However, we note the following portion of Judge Russo's opinion:

> [T]he [New Jersey home] was the parties['] primary residence. The parties are people of means as is evident from their tax returns. People of this status do not have as their primary home a simple[,] modest house like the [Lake House] in Pennsylvania and the luxurious [New Jersey home,] with all the amenities and

*(Footnote Continued Next Page)*

time at the Lake House merely a temporary absence from New Jersey and still counts toward their New Jersey residence for purposes of the six-month period specified in section 5421(a). Because the Children's home state is New Jersey, and New Jersey did not decline to exercise its jurisdiction, Pennsylvania lacked subject matter jurisdiction over the instant custody dispute. Thus, the trial court properly dismissed Father's custody action.

Order affirmed.

---

housekeepers that cost $150,000 per year[,] to maintain as a secondary house. From the photos submitted by both parties and entered into evidence, the [New Jersey home] was a home. It was tastefully furnished and well kept. The [Lake House] appeared to be a part[-]time get away lake house. The [New Jersey] home was 5 bedrooms, 5½ bathrooms, it had a gym, sauna, and steam room. The [New Jersey] home also had a dedicated office and a playroom for the [C]hildren. The home was fully airconditioned. The [Lake House] had 1 bathroom, no dedicated office and no air conditioning. [The parties] had a housekeeper coming to the [New Jersey] home 2 times per week and no housekeeper in Pennsylvania. … There are no stores or restaurants at or near the [Lake House]. The [parties'] phone and credit card bills go to the [New Jersey] home.

*Id.* at 13-14.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>06/06/2025</u>